# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

CARMEN COLLINS,

                    Plaintiff,

          v.                                        Case No. 07-CV-437

MIDWEST MEDICAL RECORDS ASSOCIATION,

                    Defendant.

_____

# ORDER

On May 11, 2007, plaintiff Carmen Collins ("Collins") filed a complaint against

defendant Midwest Medical Records Association ("MMRA"), alleging violations of the

Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., ("FMLA"), the Fair

Labor Standards Act of 1938, 29 U.S.C. § 201, et seq., ("FLSA"), and Wisconsin

statutes.  Collins alleges that MMRA violated the FMLA by interfering with her right

to  be restored to work after taking a leave of absence, and by retaliating against her

for exercising FMLA rights to which she was entitled.   Collins also alleges that

MMRA failed to pay her for work on August 10, 2006, in violation of the FLSA and

Wisconsin state statute.   MMRA counterclaims for unjust enrichment, seeking

reimbursement for dental insurance premiums it allegedly paid on Collins's behalf

during her leave of absence.  Both parties now move for summary judgment.  MMRA

moves for summary judgment on Collins's claims under the FMLA, FLSA and

Wisconsin law, as well as MMRA's counterclaim of unjust enrichment.   Collins

moves for summary judgment on MMRA's counterclaim of unjust enrichment. Both parties have also filed multiple nondispositive motions.

## BACKGROUND

On January 25, 2005, Collins began working for MMRA as a medical records "copier/floater" in the Milwaukee, Wisconsin, area. (Def's Proposed Findings of Fact ("DPFF") ¶ 18, Docket #53). MMRA, an Illinois corporation, considers itself a "release of information service company" providing medical records services to healthcare facilities in Illinois, Wisconsin, South Carolina, New York, Florida and Georgia. (DPFF ¶¶ 1-5). MMRA maintains its corporate office in Schaumburg, Illinois. (DPFF ¶ 17).

As a copier/floater, Collins's duties included retrieving, copying and sending out medical records from client sites. (DPFF ¶ 21). Initially, Collins worked full-time, and principally stationed at MMRA client Aurora Sinai Medical Center in Milwaukee. (DPFF ¶¶ 19, 24). On May 19, 2006, MMRA employed fewer than 50 employees within 75 miles of Collins's work site. (DPFF ¶ 25). According to MMRA's vice president of operations, MMRA employed a total of 44 employees within 75 miles of Collins's work site between April 1, 2006, and August 10, 2006. (Biery Decl. ¶ 27, DPFF Ex. 6, Docket #53-14).

By Spring of 2006, Collins decided she needed more time to care for her daughter, who suffered from seizures, asthma and cerebral palsy. (Plaintiff's Additional Factual Propositions ("PPFF") ¶ 28, Docket #64). So, beginning on or

-2-

about April 25, 2006, Collins reduced her working hours to part-time. (DPFF ¶ 20). Collins also began to take intermittent leave from work. MMRA's Employee Handbook ("Handbook"), a copy of which was provided to Collins, allows eligible employees to take leaves of absence from work without pay, in accordance with state and federal law. (DPFF ¶¶ 33-34). The Handbook also states that group health insurance is to be continued during leave time, and that the employee is responsible for premiums during that time. (DPFF ¶ 35).

On March 23, 2006, MMRA human resources manager Patricia O'Donnell ("O'Donnell") sent Collins a letter informing her of MMRA's procedures for taking medical-related leave. (DPFF ¶¶ 40-41). The letter included an enclosure of forms and provided the following directions: "In order for you [Collins] to qualify for an FMLA, Leave of Absence I will need to have these papers filled out by your doctor." (DPFF ¶ 41 Ex. 5, Docket #53-12). The enclosed forms included a standardized "Certification of Health Care Provider" form from the U.S. Department of Labor and a "Leave of Absence Request for Family or Medical Leave" form for Collins to complete. (DPFF ¶¶ 42-43). Collins and one of her daughter's physicians completed the forms and returned them to MMRA. (DPFF ¶¶ 46, 48, 50). The forms indicated that Collins sought intermittent leave to accompany her daughter whenever her daughter needed medical attention. (DPFF ¶¶ 47-50).

On April 28, 2006, O'Donnell sent a letter to Collins approving her request for leave. (DPFF ¶ 58). In the letter, O'Donnell wrote "Your FMLA was approved for

-3-

Intermittent Medical Leave for the medical care [sic] daughter Araya by the Certification sent in by her doctor on April 4, 2006." (DPFF Ex. 5, Docket #53-12). O'Donnell also completed another U.S. Department of Labor form entitled "Employer Response to Employee Request for Family or Medical Leave," which outlined the standard statutory conditions of Collins's leave. (DPFF Ex. 5, Docket #53-12).

Soon after her intermittent leave was granted, Collins verbally requested full-time leave to care for her daughter. (DPFF ¶ 82). On May 13, 2006, a pediatrician treating Collins's daughter prepared a letter stating that Collins's daughter required 24 hour attention due to her uncontrolled seizures. (DPFF ¶ 83). Around the same time, however, MMRA management apparently became dissatisfied with Collins's performance. On May 12, 2006, O'Donnell told Collins's supervisor, Sheri Gorske ("Gorske"), that Collins needed to receive a written warning for her excessive unexcused tardiness at work. (DPFF ¶ 69). According to MMRA, Collins was tardy without prior approval and for non-leave purposes on forty-eight days in 2006, including arriving one and a half hours late for work on May 12th. (DPFF ¶¶ 67-68). MMRA had also removed Collins from a different client because of Collins's poor work quality. (DPFF ¶¶ 60-61). On May 18, 2006, MMRA issued Collins a written warning, citing her excessive absences, tardiness and early departures from work, as well as her frequent absence from designated work areas and her rudeness when speaking with her manager and supervisor. (DPFF ¶¶ 70-71). The letter included a "Desired Performance" section citing multiple pages of

MMRA's employee manual, and a "Explanation for Goal Improvement" section describing the desired changes sought in Collins's behavior. (DPFF ¶¶ 73-74). The letter also warned that failure to immediately improve her behavior would result in "[f]urther disciplinary action up to and including termination." (DPFF ¶ 75).

On the same day the written warning was issued, O'Donnell sent Collins a letter requesting that additional forms be completed by Collins and her daughter's physician to qualify for a full-time leave of absence. (DPFF ¶¶ 86-87). Collins began her full-time leave on May 18, 2006. (DPFF ¶ 88). As of June 21, 2006, neither Collins nor her daughter's physician had returned the forms O'Donnell provided despite reminders from MMRA. (DPFF ¶¶ 89-94). On June 1, 2006, O'Donnell sent a separate letter to Collins informing her that she would be responsible for paying her biweekly premium of $19.18 if she wished to continue dental insurance coverage during her leave of absence. (DPFF ¶¶ 209-10). Normally, this premium had been deducted from Collins's paycheck automatically. (DPFF ¶ 207). Collins never paid the premium during her leave of absence, but MMRA apparently paid Collins's premium during that period. (DPFF ¶ 211).

The parties dispute whether Collins told O'Donnell the date on which she would return to work, but it appears that O'Donnell initially believed that Collins would return sometime after July 4, 2006. (DPFF ¶ 96-99). It was not until June 26th or 27th that the leave forms were completed and returned to MMRA. (DPFF ¶¶ 101, 105). The "Leave of Absence Request" form sought leave from May 18,

Case 2:07-cv-00437-JPS   Filed 03/09/09   Page 5 of 44   Document 86

2006, to August 10, 2006. (DPFF ¶ 107). MMRA granted Collins's request for leave. (DPFF ¶ 116). During her leave of absence, Collins not only cared for her daughter, but also found time to search for a new job and apply for unemployment benefits. (DPFF ¶¶ 120, 124). During that same time, Collins's daughter also continued to attend school. (DPFF ¶ 119). By August 10, 2006, Collins had taken more than 12 weeks of leave during the 2006 calendar year. (DPFF ¶ 117).

On August 10, 2006, Collins attempted to return to work at Aurora Sinai Medical Center. (DPFF ¶¶ 126-27). However, Collins's return came as a surprise to her supervisor, Gorske. MMRA had a policy requiring its employees returning from medical leave to provide a release from a physician before returning to work. (DPFF ¶ 129). Collins had not provided MMRA with such a release. (DPFF ¶ 128). After Gorske told Collins that she needed to provide MMRA with a release before working, Collins called O'Donnell and had a heated conversation. (DPFF ¶¶ 145-56). During that conversation over the phone, Collins called O'Donnell a liar and raised her voice several times. (DPFF ¶¶ 157, 167). After the call ended, a coworker heard Collins make several disparaging comments about O'Donnell and MMRA. (DPFF ¶ 170-78). Later, that coworker reported Collins's remarks to MMRA management. (DPFF ¶ 183).

On the afternoon of August 10, 2006, Collins contacted one of her daughter's physicians to obtain a release; but it was apparently too little, and too late for MMRA. (DPFF ¶¶ 184-86; PPFF ¶ 65). That same evening, O'Donnell contacted Collins and

informed her that MMRA was investigating her conduct at Aurora Sinai Medical Center earlier in the day.  (DPFF ¶¶ 187-88).  The next day, MMRA decided to terminate Collins's employment, claiming she had been insubordinate, had caused an outburst at Aurora Sinai Medical Center, and had used inappropriate language toward O'Donnell.  (DPFF ¶ 193).  MMRA did not pay Collins for the 1.35 hours she clocked in on August 10, 2006.   (DPFF ¶¶ 211-12, 216).  On August 26, 2006, MMRA sent Collins a letter demanding payment of $95.90, representing five biweekly dental insurance payments of $19.18 MMRA claimed Collins owed from her leave of absence.  (Pl.'s Resp. to Def.'s Proposed Findings of Fact ¶ 216, Docket #63; PPFF ¶ 77).

## ANALYSIS

Before addressing the merits of the parties' motions for summary judgment, the court first considers several non-dispositive motions filed by the parties.  MMRA has filed three motions to strike documents filed by Collins, including one of Collins's motions to strike.  Collins has filed two of her own motions to strike documents filed by MMRA, and moved for leave to file her brief in opposition to MMRA's motion for summary judgment out of time.  The court addresses each of these non-dispositive motions in turn.

**1.    MMRA's Motions to Strike**

MMRA's first moves to strike an affidavit submitted by Collins as an attachment to her motion for summary judgment. (Docket #59).  MMRA claims that

-7-

Collins failed to disclose the affidavit before filing it with her motion for summary judgment, in violation of Fed.R.Civ.P. 26(e). In the alternative, MMRA seeks to strike paragraphs 1, 5 and 8 of Collins's affidavit because they are conclusory, and to strike paragraphs 4 and 5 because they are inconsistent with Collins's prior deposition testimony. Collins responds that the affidavit should not be stricken because it does not create any unfair surprise, and because the specific paragraphs MMRA seeks to have stricken are not conclusory and are consistent with Collins's prior deposition testimony.

Under Fed.R.Civ.P. 26(e), a party is obligated to supplement or correct his or her disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(1)(A). If a party fails to supplement disclosures as required, Fed.R.Civ.P. 37(c) prohibits that party from using that additional information to supply evidence on a motion, "unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

After reviewing the affidavit, filed as an attachment to Collins's motion summary judgment (Docket #54), the court is not convinced that it contains any additional or corrective information about which MMRA was not otherwise made aware through other discovery disclosures. MMRA has not specifically identified any information in the affidavit that had not been previously disclosed to MMRA in some

form. Instead, MMRA appears to be arguing that Rule 26(e) was violated because it had not received the information in affidavit *form*. However, Rule 26(e) only requires disclosure where additional *information* becomes available, not when a party puts the same information in a new form – in this case, affidavit form.

Nor is the court convinced that selectively striking paragraphs from Collins's affidavit is justified in this case. MMRA argues that Collins's averments in paragraphs 1, 4, 5 and 8 of her affidavit were not made on personal knowledge as required by Fed.R.Civ.P. 56(e) because they contain legal conclusions. Rule 56(e) requires that any affidavits supporting a motion for summary judgment "must be made on personal knowledge, set out facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e)(1). MMRA claims that Collins's references to taking "FMLA leave" are conclusory. While Collins's references to "FMLA leave," instead of "leave" may be conclusory, the court considers the question of whether Collins's leave of absence was protected by the FMLA to be largely irrelevant to MMRA's unjust enrichment counterclaim, which the affidavit seeks to address. As a result, the court declines to strike these paragraphs in their entirety based on one minor, and immaterial, adjective clause contained therein.

MMRA's next contention is that Collins's affidavit is inconsistent with her deposition testimony. MMRA directs the court to paragraphs 4 and 5 of the affidavit. In paragraph 4, Collins avers that she did not submit any dental benefit claims during

-9-

her leave from May to August of 2006. MMRA claims that Collins stated in her deposition that she did not use her dental insurance during her leave. In paragraph 5, Collins avers that she performed her regular job duties upon returning to work on August 10, 2006, which included gathering supplies and making computer entries. MMRA claims that Collins states in her deposition that she "probably lollygaged" with coworkers when she returned to work on August 10th. The court does not consider either of these paragraphs contradictory. Rather, Collins's affidavit appears to clarify her somewhat ambiguous responses to deposition questions. *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055-56 (7th Cir. 2000) (distinguishing an affidavit that contradicts prior sworn testimony to one that functions to clarify prior statements). Furthermore, any inconsistency between Collins's affidavit in support of her motion for summary judgment does not appear to be aimed at shoring up obvious gaps in her case. *See id.* at 1056 (noting that contradictions do not create genuine issues of fact). Therefore, any potential inconsistencies are harmless. Because the court does not consider the portions of Collins's affidavit which MMRA seeks to strike to contain any additional information that is material to MMRA's unjust enrichment counterclaim, and because the court does not consider the affidavit to be conclusory or contradictory of prior testimony, the court is obliged to deny MMRA's motion to strike Collins's affidavit. (Docket #59).

MMRA next seeks to strike Collins's additional factual propositions in opposition of MMRA's motion for summary judgment because they were untimely.

(Docket #68). MMRA claims that the deadline to make filings in opposition of MMRA's motion for summary judgment was August 6, 2008. MMRA claims that the additional factual propositions were filed at 12:05 a.m. on August 7, 2008. Collins responds that her factual propositions were timely filed on August 6, 2008, and notes that the notice of electronic filing of the document in question states that it was filed on August 6, 2008. Under this district's Electronic Case Filing Procedural Order, "a document filed electronically is deemed filed at the date and time stated on the Notice of Electronic Filing from the court." Procedural Order, Effective December 1, 2007, http://www.wied.uscourts.gov/dmdocuments/ECFProceduralOrder12-7.pdf. MMRA included a copy of the electronic notice of filing, which states that the document was filed on August 6, 2008. Therefore, the court considers Collins's additional factual propositions, (Docket #64), to have been filed in a timely manner, and MMRA's motion to strike is denied. (Docket #68).

Finally, MMRA moves to strike one of Collins's motions to strike, claiming it is untimely. (Docket #73). MMRA argues that Collins's motion to strike portions of documents filed by MMRA in support of MMRA's motion for summary judgment, which was filed on August 18, 2008, (Docket #65), should have been filed by August 6, 2008. Again, August 6, 2008 was the deadline to file opposition papers for the two pending motions for summary judgment. Collins responds arguing that her motion to strike, made pursuant to Fed.R.Civ.P. 56(f) and 37(c), was not bound by the deadline to submit opposing briefs on the parties' motions for summary

-11-

judgment. The court agrees and, therefore, denies MMRA's motion. (Docket #73). Neither Fed.R.Civ.P. 56(f), nor Fed.R.Civ.P. 37(c) require a specific time for filing, and the court's order granting an extension for both parties to oppose their motions for summary judgment did not purport to set a deadline for motions to strike. Moreover, MMRA has provided the court with no case law supporting its interpretation of these rules.

## 2. Collins's Motions to Strike

The court now turns to the motions to strike filed by Collins in relation to the parties' motions for summary judgment. Collins first moves, pursuant to Fed.R.Civ.P. 56(f) and 37(c), to strike portions of a declaration and an exhibit submitted by MMRA in support of its motion for summary judgment. (Docket #65). The exhibit, labeled as exhibit B, is a partially redacted summary of MMRA's employees and their work locations between April 1, 2006, and August 10, 2006. The declaration, labeled as exhibit 6, is from MMRA's vice president of operations, Debra Biery ("Biery"), and includes several paragraphs citing the employee summary at exhibit B. (Ex. 6, Docket #53). Collins claims that the summary of MMRA's employees and their work locations was not disclosed before the close of discovery, and was only disclosed with MMRA's motion for summary judgment. MMRA responds arguing that it disclosed the underlying information in a previous affidavit from Biery, filed June 6, 2007, in support of MMRA's motion to dismiss. (Docket #7). MMRA further claims that Collins had an opportunity to question Biery on the subject

during her deposition conducted on April 22, 2008. MMRA also claims that it provided Collins with payroll records on April 21, 2008, and that it provided the specific Biery declaration and the employee summary as a supplemental discovery response on June 27, 2008.

Fed.R.Civ.P. 56(f) provides the following:

If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Fed.R.Civ.P. 56(f). Collins has not shown that she cannot present facts essential to her opposition to MMRA's motion for summary judgment. Therefore, the court finds no basis to grant relief under Fed.R.Civ.P. 56(f).

Fed.R.Civ.P. 37(c) provides the following:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c). Rule 26(e), as the court cited earlier, requires a party who has made a disclosure to supplement or correct its disclosure when and if it learns that its disclosure is incomplete in some material way, and if the opposing party is not otherwise aware of the supplemental information. *See* Fed.R.Civ.P. 26(e)(1)(A). Collins does not dispute that MMRA disclosed information on its employees in June 2007, April 2008, and MMRA supplemented that information by providing the Biery declaration and the employee summary in question on June 26, 2008. Given the

-13-

fact that Biery's declaration of June 6, 2007, disclosed much of the same information, the fact that MMRA has apparently supplemented its disclosures, and the fact that Collins had the opportunity to depose Biery, the court finds that MMRA has not failed to provide information as required by Rule 26(e). As a result, the court denies Collins's motion to strike. (Docket #65).

Next, Collins moves to strike MMRA's reply to Collins's response to MMRA's proposed findings of fact. (Docket #78). Collins argues that MMRA is not authorized to file a reply to her response to MMRA's proposed findings of fact filed in support of MMRA's motion for summary judgment. MMRA responds arguing that the local rules do not forbid it from filing a reply brief to Collins's responses to MMRA's proposed findings of fact.

Under Civil Local Rule 56.2, a party moving for summary judgment must include either a stipulation of facts, the movant's proposed findings of fact in numbered paragraph form or a combination of the two. A party opposing the motion for summary judgment must include specific responses to the movant's proposed findings, and the nonmoving party may also include additional factual propositions relevant to the motion. Finally, the movant may respond to any additional factual propositions put forth by the nonmoving party. *See* Civil L.R. 56.2.

Here, MMRA filed proposed findings of fact with its motion for summary judgment. (Docket #53). Collins responded to MMRA's findings of fact, and Collins's responses included what could be considered additional factual

-14-

propositions. (Docket #61). Collins also filed a separate statement of additional factual propositions. (Docket #64). MMRA responded to Collins's statement of additional factual propositions, and separately responded to the factual propositions made in Collins's response. (Docket ##'s 67, 72). At that point, the court considers both parties to have exhausted their opportunity to set forth the facts relating to MMRA's motion for summary judgment. Therefore, MMRA's response, or reply as it termed it, to Collins's additional factual propositions in her response to MMRA's original proposed findings did not violate Civil Local Rule 56.2. Accordingly, the court denies Collins's motion to strike. (Docket #78).

### 3.     Collins's Motion for Leave to File Brief Out of Time

The final motion the court must address before considering the parties' motions for summary judgment is Collins's motion for leave to file her brief in opposition to MMRA's summary judgment motion out of time pursuant to Fed.R.Civ.P. 6(b).

Both parties moved for summary judgment on June 30, 2008. Under Civil Local Rule 7.1, both parties had 30 days to serve a response to those motions. On July 29, 2008, one day before the opposition brief would have otherwise been due, Collins moved for an extension of time to respond. (Docket #55). At that time, Collins's counsel, Gordon Leech ("Leech"), represented to the court that he needed until August 6, 2008, to respond to MMRA's summary judgment motion due to his obligations in a unexpected state court jury trial, which ended on July 25, 2008.

MMRA did not oppose this initial extension, and the court granted the motion extending time for both parties to respond to August 6, 2008. (Docket #56). In granting that extension, the court noted that no further extensions would be granted. Six days after the court granted the initial extension, on August 5, 2008, Collins moved again for an extension of time to respond, this time to August 11, 2008. As grounds for the second extension, Leech stated that he did not anticipate being able to meet the August 6, 2008 deadline, and that he was "scheduled for a hearing in a contested matter on August 7, 2008." (Docket #57). On August 6, 2008, the court denied Collins's motion in a margin order. Twelve days later, on August 18, 2008, Collins filed a brief in opposition along with a motion for leave to file it out of time. (Docket #66).

Under Civil Local Rule 7.1, "failure to file a timely brief shall be deemed a waiver of the right to submit it." Civil L.R. 7.1(d). However, when a party fails to act within the time specified to act, Rule 6(b) allows the court to extend time for good cause where that party shows that his or her failure was due to excusable neglect. In evaluating whether a party's omission constitutes excusable neglect, the court must balance all relevant circumstances. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006). The relevant circumstances include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

-16-

(quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Here, MMRA claims that it suffered unfair prejudice due to Collins's delay in filing her opposition brief. MMRA argues that it was required to respond to Collins's summary judgment motion within the same time frame, and MMRA did so in a timely manner. MMRA also argues that Collins had more time, and the benefit of MMRA's response to Collins's motion for summary judgment when constructing arguments for an opposition brief. MMRA also claims it has incurred additional costs in responding to Collins's motion to file her brief out of time.

As to the reasons for the delay, Collins's counsel gives the following justification for his failure to file a brief in opposition in time:

> Counsel was unable to meet the filing deadline for the brief because of the demands of his practice. On or about July 1, 2008, the senior partners assigned the undersigned counsel to try a contested jury trial before the circuit civil court in Milwaukee County as local counsel for out-of-town co-counsel. The undersigned counsel's trial demands were great, and involved significant pre-trial preparation of all fact witnesses and handling the direct and cross examination of same at trial, along with sharing the final argument. Counsel's entire month of July was absorbed by this trial, which ended on July 25, 2008, but has resulted in post-trial motions as well. The undersigned had other pressing matters in addition to the instant action that also needed his attention as soon as the trial ended. Since the trial ended, the undersigned has made daily efforts, including nights and weekends, to produce the opposition papers to Defendant's motion for summary judgment. The attached brief is a significant undertaking, as there are many issues involved in this litigation ranging from novel issues of law on the assignment of burdens under the FMLA, application of estoppel to the FMLA, unlawful deduction under Federal and state wage laws, and contested factual assertions by the parties. Counsel was, however, unable to complete the brief portion of the opposition in a timely matter.

-17-

(Motion, ¶ 3, Docket #66). The court recognizes that this story may be emblematic of the way many lawyers and law firms do business today. However, this delay could hardly be considered outside of Leech's control. Moreover, the court does not consider this case to present particularly novel legal questions as Leech contends.

While the court has no basis to find Collins, or her counsel acted in bad faith in filing an untimely brief, the court does question counsel's proffered reasons for this delay. It is apparent to the court that Collins's counsel was, or should have been, aware of his other immediate professional obligations on July 29, 2008, the date on which Colins sought, and was granted, an extension to respond. Nothing in Collins's latest motion demonstrates that any unforeseeable circumstance intervened and prevented Collins's counsel from filing a brief by August 6, 2008. Collins's counsel had ample opportunity, and indeed an obligation, to seek an extension from the court that counsel reasonably believed he could meet. *See generally Beam v. IPCO Corp.*, 838 F.2d 242, 249 (7th Cir. 1988) (noting that lawyers owe a duty of candor to the court).

In balancing the relevant factors, the court finds that Collins has not demonstrated excusable neglect. As a result of the delay, Collins had twelve extra days to construct arguments opposing MMRA's motion for summary judgment. Meanwhile, the resolution of this case has been unnecessarily hindered by not only the original twelve-day delay, but also the two additional motions filed as a direct result of that delay. Collins's counsel had full control over this delay, and had an

-18-

opportunity to mitigate any adverse effects of the delay by seeking a longer extension in the first instance on July 29, 2008. While Collins's counsel may not have acted in bad faith, the court finds that the equities weigh against a finding of excusable neglect. Court ordered deadlines are not meant to be aspirational. As the Seventh Circuit has stated:

> We live in a world of deadlines. If we're late for the start of the game or the movie, or late for the departure of the plane or the train, things go forward without us. The practice of law is no exception. A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored.

*Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996). Because Collins has not demonstrated that her failure to file a timely brief was a result of excusable neglect, the court is obliged to deny Collins's motion for leave to file the brief out of time. Therefore, pursuant to Civil Local Rule 7.1(d), the court considers Collins to have waived her right to submit a brief in opposition to MMRA's motion for summary judgment, and Collins's brief in opposition will be stricken from the record.

## 4.   Summary Judgment Motions

The court now turns to the parties' motions for summary judgment. MMRA moves for summary judgment on Collins's three claims brought under the FMLA, FLSA and Wisconsin law, as well as on its own counterclaim of unjust enrichment. Collins moves for summary judgment on MMRA's counterclaim of unjust enrichment.

To prevail on a motion for summary judgment, the moving party must first establish that there is no genuine issue of material fact, and that the moving party

-19-

is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those facts that "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).  Once the moving party meets this initial burden, a nonmoving party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial, and may not rely on allegations or denials in the nonmoving party's pleadings.  Fed.R.Civ.P. 56(e).  Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  In conducting its review, the court views all facts and draws all reasonable inferences in favor of the nonmoving party.  *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

### A.    MMRA's Motion for Summary Judgment

Although the court considers Collins to have waived her right to submit a brief in response to MMRA's motion for summary judgment, Collins did file responses to MMRA's proposed factual findings, and additional factual propositions in a timely manner, both of which the court has taken into account.  Regardless of Collins's response, in order to prevail on its motion, MMRA must meet its burden of

-20-

demonstrating that no genuine issues of material fact remain and that MMRA is entitled to judgment as a matter of law.

MMRA argues that Collins's claims under the FMLA fail because Collins was not an employee covered by the statute at the time of her firing. In the alternative, MMRA argues that even if Collins had been covered by the FMLA, Collins's FMLA claims would fail because MMRA granted every request for leave Collins sought and her termination was based on insubordinate behavior before and after taking leave, rather than any retaliatory motive.

Under the FMLA, an "eligible employee" is entitled to 12 weeks of unpaid leave during a 12 month period in order to, among other reasons, "care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Eligible employees include those who have worked for an employer for at least 12 months and for whom they have worked at least 1,250 hours in the preceding 12 months. *See* 29 U.S.C. § 2611(2)(A). Eligible employees do not include, however, those "employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii). This is sometimes referred to as the FMLA's "50/75 exception." *See Peters v. Gilead Sciences, Inc.*, 533 F.3d 594, 598 (7th Cir. 2008).

-21-

MMRA first argues that Collins was never entitled to the protections of the FMLA because she did not qualify as an eligible employee. MMRA claims that Collins was never employed at a worksite within 75 miles of which MMRA employed at least 50 employees. Therefore, MMRA argues, the 50/75 exception applies, making Collins ineligible for FMLA protected leave under 29 U.S.C. § 2611(2)(B)(ii). Collins has put forth additional factual propositions that seem to question MMRA's use of a payroll report as a means of determining the number and location of MMRA's employees. (PPFF ¶ 9). However, Collins has not actually disputed MMRA's contention that MMRA never employed 50 or more employees within a 75 mile radius of Collins's work site.[1] Nor has Collins proposed any additional facts that could give rise to a genuine issue. As a result, the court finds that no genuine issue remains on the fact that MMRA employed fewer than 50 employees within a 75 mile radius of Collins's work site. Normally, this finding would lead the court to conclude that the FMLA's 50/75 exception applies, making Collins ineligible to take leave under the FMLA, and that MMRA would, therefore, be entitled to judgment as a matter of law. However, as the court noted in its previous order denying MMRA's motion to dismiss, the facts of this case clearly present an issue of equitable estoppel.

---

[1]Collins did not dispute MMRA's proposed finding of fact that MMRA employed fewer than 50 employees within a 75 mile radius, and the court must, therefore, conclude that there is no genuine material issue regarding this fact. Civil L.R. 56.2(e).

Case 2:07-cv-00437-JPS   Filed 03/09/09   Page 22 of 44   Document 86

Even if an employee would not otherwise be eligible for the leave rights provided by the FMLA, an employer may be estopped from denying an employee's eligibility for FMLA. Equitable estoppel applies where: (1) an employer misrepresents to an employee his or her FMLA eligibility; (2) the employee reasonably relies on that misrepresentation; and (3) the employee suffers a detriment due to his or her reliance. *See Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992) (defining general elements of equitable estoppel). The Seventh Circuit has never directly addressed the availability of equitable estoppel in an FMLA claim. *See Peters*, 533 F.3d at 598-99 (declining to consider applicability of equitable estoppel, but noting that other circuits have recognized equitable estoppel in an FMLA claim); *Townsend-Taylor v. Ameritech Servs., Inc.*, 523 F.3d 815, 817 (7th Cir. 2008) (noting equitable estoppel could apply in FMLA claim). However, other circuits have recognized equitable estoppel as a bar to an employer's defense of FMLA ineligibility. *See e.g.*, *Minard v. ITC Deltacom Commc'n, Inc.*, 447 F.3d 352 (5th Cir. 2006); *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481 (8th Cir. 2002); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706 (2nd Cir. 2001). Also, district courts within the Seventh Circuit have applied equitable estoppel to FMLA claims. *See e.g.*, *Murphy v. N. Am. Lighting*, 540 F.Supp.2d 1018, 1021-22 (C.D. Ill. 2008); *Sullivan v. Fort Wayne Foundry Corp.*, No. 04-CV-307, 2006 WL 1660590, at *6-7 (N.D. Ind. June 6, 2006). Also, in *Dormeyer v. Comerica Bank-*

-23-

*Illinois*, 223 F.3d 579 (7th Cir. 2000), the Seventh Circuit suggested that equitable estoppel could apply to an FMLA claim:

> [A]n employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave.

*Id.* at 582. (citations omitted).

Here, MMRA claims that it never represented to Collins that she was eligible for FMLA leave. MMRA points to the section of its handbook on family and medical leaves of absences, which restates the limitations of the FMLA's 50/75 exception on employees' eligibility for leave. MMRA notes that Collins has admitted receiving and reviewing the Handbook before taking any leave. However, MMRA does not claim that it ever informed Collins as to whether or not she was an eligible employee prior to her taking a leave of absence. This is relevant because MMRA appears to have been in sole possession of the information necessary to determine whether Collins was an eligible employee under the FMLA's 50/75 exception.

With this in mind, and when viewing the facts in a light most favorable to Collins, a reasonable finder of fact could conclude that, in granting Collins intermittent leave in April of 2006, and in granting extended leave in May of 2006, MMRA affirmatively represented to Collins that she was eligible for leave under the FMLA. When Collins sought and was granted intermittent leave in April of 2006, MMRA requested that Collins and her daughter's physician fill out standardized U.S.

Department of Labor FMLA leave request forms. Under the FMLA, an employer may require that an eligible employee requesting leave provide "certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee . . . as appropriate." 29 U.S.C. § 2613(a). Then, MMRA informed Collins in writing that her "FMLA was approved for Intermittent Medical Leave . . ." In May of 2006, upon seeking extended leave, Collins was once again presented with similar forms and written communications from MMRA indicating that MMRA considered Collins eligible for leave under the FMLA. What is more, after approving Collins's extended leave, MMRA notified Collins that her group dental insurance coverage would continue during her leave, which is required for eligible employees under the FMLA. *See* 29 U.S.C. § 2614 (c)(1) (requiring maintenance of group coverage during leave).

Further, a fact finder could also fairly conclude that Collins reasonably relied on that representation to her detriment by seeking and taking extended leave in May of 2006. After granting what was purported to be intermittent FMLA leave, MMRA issued Collins a written warning based in part on her apparent unexcused absences from work. Then, upon returning to work on August 10, 2006, from another approved leave, Collins got into a heated argument with her superiors at MMRA on the issue of her right to return to work without a doctor's note. That heated argument was the tipping point which led MMRA to terminate Collins's employment. While the warning issued to Collins, and her ultimate dismissal could have been based on

conduct independent of her taking leave, thereby vitiating any detrimental reliance, arriving at such a conclusion would require the court to weigh conflicting evidence and choose between competing inferences. This would be an inappropriate exercise for the court at the summary judgment stage. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citation omitted). Therefore, the court finds that a genuine issue of material fact remains as to Collins's reasonable reliance on MMRA's representations that Collins was eligible for FMLA leave. If a jury ultimately finds such reasonable reliance, MMRA would be estopped from claiming Collins was ineligible for the protections of FMLA leave. At this point, however, the court cannot say, as a matter of law, that Collins was ineligible for leave under the FMLA.

MMRA next argues that, even if Collins were eligible for leave under the FMLA, Collins has not shown that MMRA violated the FMLA. MMRA claims that Collins has not demonstrated it interfered with her FMLA rights. MMRA asserts that Collins's circumstances did not require MMRA to grant her leave to care for her daughter, but that MMRA went above and beyond the FMLA's requirements in granting all of Collins's requests for leave. MMRA also claims that Collins has not shown that MMRA discriminated against her, either directly or indirectly.

The FMLA prohibits employers from interfering with, restraining or denying "the exercise of or the attempt to exercise, any right provided," under the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA also prohibits an employer from discharging or otherwise discriminating "against any individual for opposing any practice made

-26-

unlawful," by the FMLA. 29 U.S.C. § 2615(a)(2). After taking leave, an eligible employee under the FMLA is entitled: "(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. §2614(a)(1).

In order to show an employer interfered with a protected FMLA right, an employee must show: (1) the employee was eligible for FMLA leave; (2) the employer was covered by the FMLA; (3) the employee was entitled to leave; (4) the employee provided notice to employer of intent to take leave; and (5) the employer denied benefits to which the employee was entitled. *See de la Rama v. Illinois Dep't of Human Servs.*, 541 F.3d 681, 686-87 (7th Cir. 2008) (citation omitted). In this case, the benefit to which Collins alleges she was entitled was reinstatement to work on August 10, 2006. Collins claims that MMRA interfered with that right by demanding Collins provide a doctor's certification before returning to work.

In seeking summary judgment on Collins's interference claim, MMRA does not dispute that it is an employer covered by the FMLA, or that Collins provided sufficient notice of her intentions to take a leave of absence. Because the court has also found that MMRA may be estopped from denying Collins's FMLA eligibility, the only remaining questions are those of Collins's entitlement to leave, and MMRA's possible denial of those benefits.

-27-

MMRA claims that Collins was not entitled to take leave to care for her daughter's health condition. MMRA first suggests that Collins's daughter's condition was not serious by noting that Collins's daughter attended school, and that her medical treatment did not change. However, MMRA does not dispute that multiple doctors certified that Collins's daughter suffered from multiple chronic illnesses. MMRA also suggests that Collins did not actually use her leave time to care for her daughter. During that same time, Collins apparently looked for a new job, went shopping, cleaned her home, cooked and used the internet while on leave. However, these activities, standing alone, do not necessarily show that Collins was not caring for her daughter during her leave. These facts, at most, raise an issue of fact as to whether Collins's daughter suffered a serious condition as defined by the FMLA, and whether Collins improperly used her FMLA leave. Although it is true that an employer does not interfere with an employee's FMLA rights if the employer refuses to reinstate an employee it honestly suspects of having abused his or her leave, *see Vail v. Raybestos Products Co.*, 533 F.3d 904, 909 (7th Cir. 2008), MMRA does not claim that it honestly suspected that Collins was abusing her leave. Rather, MMRA claims that its reasons for firing Collins were independent of Collins's leave of absence. Therefore, the court finds that a genuine issue of fact remains as to whether Collins was actually entitled to take a leave of absence under the FMLA.

MMRA next argues that Collins's interference claim fails because the FMLA did not entitle Collins to the full extent of her actual leave of absence. It is

-28-

undisputed that Collins ended up taking more than 12 weeks of leave in the 2006 calendar year. MMRA contends that, having exhausted her right to FMLA leave before returning to work on August 10, 2006, Collins never had a right to be reinstated on August 10, 2006. The court finds this argument to be untenable. MMRA approved Collins's requests for leave, and MMRA purported to be approving FMLA leave. The mere fact that MMRA may have granted Collins more than 12 weeks' leave does not mean that Collins forfeited her right to reinstatement without interference under the FMLA. While employers are free to devise their own employee leave policies and programs, they may not create leave programs and policies that fall below the minimum standards of the FMLA. *See* 29 U.S.C. § 2652 ( § 825.700(a) ("the rights established . . . [by the FMLA] . . . shall not be diminished by any . . . employment benefit program or plan").

Finally, if a jury finds that Collins's daughter suffered from a serious condition and that Collins cared for her daughter during her leave of absence, the court finds that Collins has also presented sufficient evidence to establish that MMRA interfered with her right to reinstatement. MMRA admits that it demanded Collins provide a doctor's certification before allowing her to return to work. However, as the court describes below, the FMLA does not appear to allow an employer to place such a condition on an employee's right to reinstatement. Having found that genuine issues of fact remain as to whether MMRA improperly denied Collins the benefit of

-29-

reinstatement under the FMLA, the court cannot say, as a matter of law, that MMRA is entitled to judgment on Collins's FMLA interference claim.

MMRA next argues that it is entitled to judgment as a matter of law on Collins's retaliation claim under the FMLA. To establish a claim of retaliation, a plaintiff may show either directly or indirectly that an employer discriminated against him or her for exercising rights under the FMLA. *See Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006). Under the direct method, if the plaintiff presents sufficient evidence to establish that the employer "took materially adverse action against [the plaintiff] on account of [his or her] protected activity," the employer is only entitled to summary judgment if it "presents unrebutted evidence that [the employer] would have taken the adverse employment action . . . even if [the employer] had no retaliatory motive." *Id.* Under the indirect method, the plaintiff "must show that after taking FMLA leave (the protected activity) he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though he was performing his job in a satisfactory manner." *Id.* at 482-83 (quoting *Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 951 (7th Cir. 2006)).

In support of its motion, MMRA asserts that Collins has not established a claim of retaliation through either the direct or indirect method. MMRA argues that Collins's retaliation claim fails under the direct method because there is no evidence that Collins was terminated because she took her FMLA leave. Rather, MMRA claims that the evidence shows MMRA assisted Collins in applying for leave, and

-30-

that MMRA granted Collins more leave than she was entitled to. MMRA asserts that it terminated Collins for inappropriate and insubordinate behavior occurring on and before August 10, 2006. MMRA also seeks to minimize the fact that Collins was fired the day after she returned to work by noting that temporal proximity alone is insufficient to establish retaliation.

When viewing the facts in Collins's favor, the court finds that genuine issues of material fact remain on Collins's retaliation claim. While insubordination may be a perfectly legitimate, nondiscriminatory basis for termination, a question of fact remains as to whether Collins's alleged insubordination was the true reason for her termination. *See Burnett*, 472 F.3d at 482. MMRA does not dispute that, upon returning to work, Collins was confronted by her supervisor, Gorske, and MMRA's manager of human resources, O'Donnell. Both Gorske and O'Donnell told Collins that she needed to submit a doctor's certification before returning to work. Under the FMLA, if the employee takes leave because of his or her own serious health condition, "the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work." 29 U.S.C. § 2614(a)(4). However, the FMLA does not allow for this employer practice or policy if the employee takes leave to care for a family member. Yet, MMRA told Collins that its policies required such a certification. MMRA readily admits that it was the August 10, 2006, telephone conversations that precipitated Collins's termination. It

-31-

is also undisputed that the subject of those conversations was MMRA's policy regarding employees returning from leave. Only a day after those conversations, Collins was terminated. Collins's supposed insubordination on August 10, 2006, appears to be based on MMRA's mistaken belief that the FMLA allowed it to require a doctor's certification from Collins before reinstating her. A reasonable juror could conclude that MMRA terminated Collins because she vigorously asserted her FMLA right to be reinstated without submitting any additional doctor's certification. Moreover, MMRA has not presented unrebutted evidence that it would have fired Collins even if she had not initially protested MMRA's demand that she provide a doctor's certification. As a result, the court finds that MMRA has failed to show it is entitled to judgment as a matter of law on Collins's FMLA claim of retaliation. Having found that Collins has presented sufficient evidence to establish a retaliation claim directly, the court need not address whether Collins has also presented sufficient evidence to also establish retaliation indirectly.[2]

The court now turns to Collins's claims for unpaid wages under the FLSA and Wisconsin law. Collins alleges that MMRA violated the FLSA and Wisconsin law by failing to pay her for the 1.35 hours she work before being sent home on August 10, 2006. As of August 10, 2006, the FLSA required employers to pay wages of not less than $5.15 an hour to their employees. *See* 29 U.S.C. § 206(a)(1) (2000) (amended

---

[2]The court does note, however, that Collins has identified at least one former MMRA employee, Tony Manvilla, who Collins asserts was similarly situated in his alleged insubordination, but was never terminated. (PPFF ¶¶ 18-20, 78-80).

2007). Wisconsin law in effect at that time, mandated employers pay a "living wage," which included a minimum wage of $6.50 an hour. *See* Wis. Stat. § 104.02; Wis. Admin. Code [DWD] § 272.03 (1m)(a) (2006). Wisconsin law also required an employer pay a departing employee in full for services rendered no later than the date on which the employee would have been paid under the employer's payroll system. *See* Wis. Stat. § 109.03(2) (2006). Prior to Collins taking leave, MMRA had paid Collins at a rate of $10.00 an hour. (DPFF ¶ 214). Collins alleges that she was never paid her wages totaling $13.50 for the 1.35 hours she worked on August 10, 2006,

In its summary judgment motion, MMRA claims that Collins has failed to establish a claim under the FLSA or Wisconsin law because Collins did not earn any income on August 10, 2006. In the alternative, MMRA argues that even if Collins had earned income from August 10, 2006, that amount would be deducted from Collins's unpaid dental insurance premiums, which had accrued during Collins's leave. On MMRA's first ground, the court finds that a genuine issue of material fact exists as to whether Collins actually earned any income on August 10, 2006. MMRA claims that Collins clocked in for 1.35 hours on August 10th, but that she did not perform work during that entire time. Collins asserts that she gathered supplies at one work site, and also worked at a second work site that day. Therefore, the parties dispute the extent to which Collins actually earned income on August 10,

-33-

2006, which in turn precludes the court from entering judgment as a matter of law on Collins's claims for unpaid wages.

In the alternative, MMRA claims even if Collins were entitled to 1.35 hours worth of wages, MMRA would have merely deducted that amount from what Collins allegedly owes MMRA for unpaid dental insurance premiums. MMRA asserts that Collins had agreed in writing to have a biweekly dental insurance premium of $19.18 deducted from her paycheck. MMRA further asserts that Collins was responsible for paying that weekly premium during her unpaid leave taken from May 18, 2006 to August 10, 2006. MMRA claims that it notified Collins of her responsibility to pay this premium, and provided Collins an option to decline coverage during her leave. MMRA claims that, pursuant to the original insurance enrollment form signed by Collins, Collins was required to notify MMRA in writing if she decided not to have insurance premiums accrue during her leave. MMRA claims that Collins never opted out of dental coverage, but that she failed to pay the premiums during her leave. MMRA asserts that it made five insurance premium payments, totaling $95.90, on Collins's behalf during her leave of absence and, therefore, Collins owed MMRA that amount.

Collins disputes whether MMRA ever paid Collins's dental insurance premiums during her leave, and whether MMRA actually deducted the amount Collins earned on August 10, 2006, from the amount MMRA alleges that she owed. Collins references a letter from MMRA to Collins dated August 26, 2006, five days

-34-

after her termination, in which MMRA demanded Collins pay the full $95.90 without any deduction for time worked on August 10th. (Pl's Resp. to Def's Proposed Findings of Fact ¶ 216, Docket #63; PPFF ¶ 77). Collins concedes that she did not pay dental insurance premiums during her leave period, but she argues that she was not obligated to make such payments. Collins claims that she followed instructions in a letter from MMRA, which stated that she could opt out of coverage by not paying the premiums.

The parties do not dispute that on March 25, 2005, Collins signed a health insurance enrollment form authorizing MMRA to make deductions from her earnings "[i]f any deductions are required for this coverage." (DPFF ¶ 206). The enrollment form also states that Collins "reserve[s] the right to revoke this deduction authorization at any time upon written notice." (DPFF ¶ 206). MMRA's leave of absence policy further states that MMRA will continue health insurance coverage during leaves of absence, but that employees are responsible for their portion of the premium. (DPFF ¶ 35). After taking leave, MMRA informed Collins, in a letter dated June 1, 2006, that she could continue her dental insurance coverage during her leave if she paid the biweekly premium:

> If you wish to continue your Health Insurance (Dental) while you are on a FMLA from Midwest Medical Record Association, Inc. that started on May 19, 2006, you will be responsible for paying $19.18 (your portion of the Dental Insurance) every two weeks starting on June 16, 2006 and continuing until you return to work.

Case 2:07-cv-00437-JPS   Filed 03/09/09   Page 35 of 44   Document 86

(DPFF ¶¶ 209-210, Ex. 21, Docket # 53-13). While it is true that neither the FLSA, nor Wisconsin law prevent an employer and employee from agreeing to deductions from wages for health insurance premiums, MMRA has not shown that Collins agreed to continue receiving dental insurance during her leave of absence.[3] Rather, by reading the plain language of the June 1, 2006 letter, it appears that MMRA offered a unilateral contract, which Collins could have accepted by her performance – i.e., by paying the bimonthly premium. MMRA claims that Collins had to provide MMRA with some formal notice, either written or oral, if she did not want to be covered by the insurance during her leave of absence. However, the June 1, 2006 letter did not state that Collins's dental insurance coverage would continue unless Collins informed MMRA that she did not want such coverage, nor has MMRA provided evidence of any previous course of dealing between the parties from which the court might read a notice requirement into the letter. Moreover, the original enrollment form MMRA cites as support for its notice argument required Collins inform MMRA in writing only if she no longer wanted MMRA to *deduct* insurance premiums from her wages, not if she wanted to opt out of dental coverage during a leave of absence. Therefore, neither Collins's enrollment in MMRA's dental health plan, nor MMRA's June 1, 2006 letter, on their face, created an obligation to pay insurance premiums while on unpaid leave. Finally, the U.S. Department of Labor's

---

[3]Notably, MMRA has not argued that it was obliged to continue providing dental insurance to Collins while she was on leave under the FMLA. See 29 U.S.C. § 2614(c)(1); 29 C.F.R. § 825.100(b). While such an argument could be made, the court declines to address it here. *See generally, Head Start Family Edu. Program, Inc. v. Coop. Educ. Serv. Agency 11*, 46 F.3d 629, 635 (7th Cir. 1995) ("This court has no duty to research and construct legal arguments available to a party").

-36-

FMLA regulations support the conclusion that an employee is not automatically obligated to retain group health insurance coverage during leave. *See* 29 C.F.R. § 825.209(e) (2006) ("An employee may choose not to retain group health plan coverage during FMLA leave"). Without such an obligation, MMRA would not have been entitled to withhold all of Collins's income earned on August 10, 2006. As a result, the court is unable to conclude, as a matter of law, that MMRA was entitled, either explicitly or by operation of law, to Collins's unpaid portion of dental insurance premiums which accrued during Collins's leave.

If Collins actually earned income on August 10, 2006, and she opted out of dental insurance during her leave, then MMRA's failure to distribute Collins's earned wages within the time mandated by Wisconsin law could be a violation of the FLSA and Wis. Stat. § 109.03(2). The court finds that Collins has presented sufficient evidence to meet these conditions and, accordingly, the court finds sufficient evidence for a reasonable juror to conclude that MMRA violated the FLSA and Wis. Stat. §§ 104.02 and 109.03(2). MMRA's motion for summary judgment is denied in its entirety. (Docket #51).

MMRA also moves for summary judgment on its counterclaim for unjust enrichment. The court will address MMRA's contentions together with Collins's motion for summary judgment below.

**B.     Collins's Motion for Summary Judgment**

Collins moves for summary judgment on MMRA's counterclaim for unjust enrichment. (Docket #54). In its counterclaim, MMRA alleges that Collins knowingly accepted the benefit of continued dental insurance coverage during her unpaid leave from May 19, 2006, to August 10, 2006, and that it would be inequitable for Collins to retain that benefit without reimbursing MMRA. MMRA seeks a total of $82.40, which represents five biweekly premium payments of $19.18, less $13.50 that MMRA claims it credited for wages earned on August 10, 2008.

In order to prove a claim of unjust enrichment under Wisconsin law, a plaintiff must show the following three elements: "(1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit." *Watts v. Watts*, 137 Wis.2d 506, 531 (1987) (citations omitted). A claim of unjust enrichment does not, however, arise from an express or implied agreement between the parties. *See id.* at 530; *Universal Forest Prods. E. Div., Inc. v. Morris Forest Prods., LLC*, 558 F.Supp.2d 893, 906-07 (E.D. Wis. 2008).

In her summary judgment motion, Collins argues that MMRA's unjust enrichment counterclaim fails because Collins did not knowingly receive a benefit from MMRA's alleged payment of dental insurance premiums during her leave of absence. Collins asserts that MMRA offered her, in writing, the option to receive

-38-

dental insurance coverage during her unpaid leave if she paid the biweekly premium of $19.18. Collins claims that she declined such coverage by not paying the biweekly premiums. Collins also argues that even if she had accepted a benefit, MMRA has not sufficiently established the value of any benefit conferred. Collins claims that the cost of the dental insurance premium was not the value conferred.

In response, MMRA asserts that it conferred the benefit of continued dental insurance coverage during her leave, which would have otherwise cost Collins a total of $95.90 to maintain. MMRA also claims that Collins knowingly accepted that benefit based on the terms of MMRA's internal leave policy, which Collins reviewed before taking her leave of absence. The policy states the following:

> While on a leave of absence provided for under this policy, we will continue your group health insurance benefits under the same terms as provided to other employees, for up to a maximum of 12 weeks leave time during any one year period. During the 12 week period you are still responsible for your portion of any insurance premiums. If your leave extends beyond 12 weeks, you shall be offered the opportunity to purchase continuing coverage under state and federal COBRA continuation rules.

(Def.'s Proposed Additional Findings of Fact ("DPAFF") ¶ 23, Docket #62). MMRA asserts that Collins was also aware that she would receive continuing dental coverage during her leave of absence because MMRA informed her of this in approving her intermittent leave in March of 2006. MMRA's approval of intermittent leave, filled out on a standardized U.S. Department of Labor form, includes a statement that Collins agreed to make dental insurance premium payments during her intermittent leave. (DPAFF ¶ 28). MMRA also reasserts its contention that

Case 2:07-cv-00437-JPS   Filed 03/09/09   Page 39 of 44   Document 86

Collins never revoked the authorization she had previously signed for MMRA to deduct dental insurance premiums from her paycheck, nor did she otherwise decline dental insurance coverage during her leave. MMRA further asserts that a copy of Collins's calendar reveals that she may have actually used her dental insurance for a tooth extraction during her leave.

Because MMRA has failed to establish a claim of unjust enrichment as a matter of law, the court will grant Collins's motion for summary judgment. The fatal flaw with MMRA's counterclaim is that it hinges on the existence and scope of an explicit or implied *agreement* between MMRA and Collins, rather than some independent flow of benefits from one party to the other. As the Wisconsin Supreme Court has put it, a claim of unjust enrichment "is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Watts*, 137 Wis.2d at 530 (citation omitted). MMRA argues that Collins agreed to take dental insurance coverage through MMRA, that Collins further agreed to have a biweekly premium of $19.18 deducted from her paycheck, and finally that Collins remained covered by MMRA's group dental insurance plan during her leave of absence despite the fact that Collins did not continue paying the biweekly premium. The question of whether Collins had an obligation to pay those biweekly premiums depends on the extent of the parties' agreement, and not on any duty to make restitution. Wisconsin law makes a clear distinction between claims made under express or implied contract, and those made

-40-

under unjust enrichment or quasi-contract theories. *See Watts*, 137 Wis.2d at 530 (distinguishing between unjust enrichment and an implied-in-fact contract). MMRA's counterclaim falls squarely within the former, but not the latter. As a result, the court is obliged to grant Collins's motion for summary judgment, and dismiss MMRA's counterclaim for unjust enrichment.

5.    **Motion to Compel**

Finally, the court turns to MMRA's outstanding motion to compel. In its motion, MMRA claims that Collins has failed to adequately respond to multiple sets of interrogatories, and requests for production of documents. The information MMRA seeks includes: (1) Collins's personnel records from previous and current employers; (2) a list of documents Collins is withholding on the basis of privilege; (3) Collins's personal emails, the contents of which relate to Collins's complaint; (4) portions of any recordings of events in Collins's life from January 1, 2006, to the present, including diaries, journals and appointment calendars; (5) documents relating to Collins's income since termination from MMRA; (6) documents relating to Collins's FMLA claim and her daughter's health condition; and (7) communications related to this case between Collins or her agent and third parties.

Because it does not appear that MMRA has met its obligations to confer with Collins in good faith to resolve its discovery dispute without court action, the court denies MMRA's motion to compel. Under Fed.R.Civ.P. 37(a)(1), a party moving to compel disclosure or discovery "must include a certification that the movant has in

good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Civil Local Rule 37.1 mandates the following:

> All motions for discovery pursuant to Fed.R.Civ.P. 26 through 37 must be accompanied by a written statement by the movant that, after personal consultation with the party adverse to the motion and after sincere attempts to resolve their differences, the parties are unable to reach an accord. The statement must also recite the date and time of such conference and the names of all parties participating in it.

Civil L.R. 37.1. In MMRA's motion, MMRA's counsel states that she personally consulted with Collins's counsel in an effort to resolve their differences. (Def.'s Motion, ¶ 9, Docket #39). MMRA's counsel then outlines these efforts, which include: (1) a letter sent on December 7, 2007, to Collins's counsel identifying deficiencies in responses to discovery requests; (2) a letter sent on January 7, 2007, by Collins's counsel responding to MMRA's December letter; (3) another letter sent on February 27, 2008, from MMRA's counsel to Collins's counsel again identifying deficiencies in discovery responses; and (4) a March 6, 2008, telephone call between the parties' counsel discussing discovery deficiencies. None of these communications between the parties describes a personal consultation on the entire subject matter of the dispute MMRA presents in its motion to compel. In fact, MMRA asserts that Collins did not respond to MMRA's Third Request for Production of Documents until March 14, 2008, eight days after the cited telephone consultation between the parties. Further, MMRA has not provided a certification as required by Fed.R.Civ.P. 37 (a)(1). While the court is ready to resolve bona fide discovery

-42-

disputes between the parties as they may arise, the court has neither the time, nor the inclination to act as a referee to every discovery spat between the parties. The parties themselves have an obligation to resolve their own discovery disputes in the first instance. Therefore, the court will deny MMRA's motion to compel without prejudice. Because the court did not address MMRA's motion to compel prior to the scheduled close of discovery, and in light of the current disposition of this case, the court will grant MMRA 10 day's leave to file a renewed motion to compel with the court if there remains any bona fide and unresolved discovery dispute between the parties. Of course, any renewed motion must otherwise comply with the Federal Rules of Civil Procedure and this district's local rules.

Accordingly,

**IT IS ORDERED** that defendant's motion to compel (Docket #39) be and the same is hereby **DENIED** without prejudice;

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (Docket #51) be and the same is hereby **DENIED**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Docket #54) be and the same is hereby **GRANTED**; defendant's counterclaim of unjust enrichment is hereby **DISMISSED** on the merits;

**IT IS FURTHER ORDERED** that defendant's motions to strike (Docket ##'s 59, 68, 73) be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiff's motions to strike (Docket ##'s 65, 78) be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a brief in opposition out of time (Docket #66) be and the same is hereby **DENIED**;

Dated at Milwaukee, Wisconsin, this 9th day of March, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge